THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* GEORGE JOSEPH BOUNDY, Defendant.

Supreme Court, Criminal Term, Queens County, September 20, 1962.

*Hyman Greenberg* for defendant. *Frank D. O'Connor, District Attorney (Benj. J. Jacobson* of counsel), for plaintiff.

JOSEPH V. LOSCALZO, J.   By an order of the Court of Appeals of the State of New York (10 N Y 2d 518) dated January 25, 1962, which reversed the order of the Appellate Division of the Second Judicial Department (13 A D 2d 839) entered the 31st day of May, 1961, unanimously affirming the order of this court entered on June 20, 1960, which denied the defendant's motion for a writ of error *coram nobis,* the defendant was produced before this court for a trial upon the defendant's allegations.

In this application the defendant alleged he was insane on January 23, 1959 when he pleaded guilty to attempted robbery in the third degree, and on April 17, 1959 when he was sentenced to Sing Sing Prison for 7½ to 10 years as a second felony offender, said sentence to run consecutively to sentence then being served.   Prior to this application the defendant made one for a writ of error *coram nobis,* alleging that an Assistant District Attorney had made a promise to him that he would receive a concurrent sentence if he pled guilty to attempted robbery in the third degree.   This application was denied by an order dated October 8, 1959.   In that application the defendant made no reference to any alleged insanity as he did in his subsequent application.

A hearing was held by this court on August 21, 1962 pursuant to the direction of the Court of Appeals.

Prior to the hearing the defendant was produced before the court on February 28, 1962, pursuant to an order dated February 20, 1962.   At that time, on motion of the District Attorney and with the consent of the defendant, he was committed to Kings County Hospital for psychiatric examination and observation pursuant to section 658 of the Code of Criminal Procedure.   A report was submitted to the court dated March 19, 1962 in which

the defendant was diagnosed as an antisocial personality and that the defendant was not insane, not imbecile, and capable of understanding the proceedings. The matter was put on the calendar for April 4, 1962, for the purpose of accepting or controverting the findings. On that date counsel was assigned to represent and assist the defendant. The defendant was committed to Bellevue Hospital for psychiatric observation and examination pursuant to section 658 on that date on motion of his counsel.

A report was submitted to the court dated April 12, 1962, which stated there was no evidence of a psychosis or mental deficiency and he could be classified as a sciopathic with strong antisocial trends and in a remission from a psychotic depression; that the defendant was not in a state of idiocy, imbecility or insanity and was capable of understanding the proceedings. A hearing was held on these findings on June 20, 1962, and continued August 14, 1962. On the same date, June 20, 1962, the defendant was recommitted to Bellevue Hospital under section 658 of the Code of Criminal Procedure on motion of the District Attorney.

A report was submitted to the court dated July 23, 1962, which found the defendant not psychotic, but had a sociopathic personality with mild depression. These findings were controverted by defense counsel and the hearing of June 20, 1962 was continued on August 14, 1962. After a complete hearing the court found the defendant was not in such a state of idiocy, imbecility or insanity as to be incapable of understanding the proceedings.

The purpose of these series of observations and reports was to ascertain that the defendant was capable of understanding the proceedings before the court on his hearing for a writ of error *coram nobis* and thereby obviate a possible later allegation that the defendant was insane at the hearing.

On August 21, 1962 a hearing was held before this court on the issue of the defendant's insanity at the time he entered his plea of guilty and at the time of sentence.

The defendant testified that he recalled making his plea of guilty to attempted robbery in the third degree and the Judge before whom he appeared, and appearing in court about four months later when he was sentenced. He then testified he had been in Dannemora State Hospital in 1949 or 1950 for about 3 years, was returned to prison and later was returned to Dannemora State Hospital for 6 or 7 months. That he was later in Dannemora State Hospital in 1955 for 17 months, and about 7 or 8 months after his sentence in this court he was committed to Dannemora State Hospital. His last admission was in October or November, 1961 for a period of 3 or 4 months.

On cross-examination he recalled he was in Kings County Hospital in 1957 because of a robbery charge pending in Kings County Court and being sentenced before Judge SOBEL in April, 1958 to 7½ to 15 years. He also recalled an earlier manslaughter conviction in Brooklyn. Recalled being returned to Queens County Felony Court where a lawyer was assigned. Remembers that the sentence of this court was imposed by Judge STIER and was consecutive to Kings County sentence.

The defendant, on his direct and cross-examination, displayed an excellent memory for events occurring during the past 12 years as well as the events of his pleading guilty and sentence in this court which is the basic issue in the hearing. The defendant offered no more proof.

At that time counsel for the defendant and the Assistant District Attorney stipulated that the court could examine all reports of Dannemora State Hospital concerning the defendant. These reports were received by the court and their contents, as it relates to the issue in this hearing, will be referred to subsequently.

The People had for their witness a psychiatrist from Kings County Hospital who had examined the defendant in August, 1948; November, 1957; March, 1958; November, 1958, and in February, 1962. It was the opinion of this witness that the defendant at no time was psychotic; that the defendant was an antisocial aggressive individual who has a sociopathic personality disturbance. When the witness' attention was directed to that period of time when the defendant was in the Kings County Hospital prison ward from November 14, 1958 until April 17, 1959, he testified that the defendant was in a camisol from March 30, 1959 to April 6, 1959 because of a suicide attempt. He testified that the reason he was kept in the prison ward after the report of November 19, 1958 which had stated the defendant was sane and capable of understanding the charge against him, the proceedings, and making his defense was because the defendant had a tendency to act out in prison. This in spite of the fact he was not psychotic and for that reason it was recommended that he be lodged in the prison ward of the hospital until final disposition of the case. He further testified he saw the defendant every day during this period including January 23, 1959 and April 17, 1959, and the defendant was not psychotic at any of the time.

In his original petition the defendant stated '' It is worthy to note here, at this time, that petitioner was under sedation daily for the entire six month period ''. At the hearing the defendant

offered no testimony as to his being under daily sedation nor was there any testimony by the psychiatrist, either on his direct examination or cross-examination, of any sedation being given to the defendant daily.

The court secured all the records of Dannemora State Hospital regarding this defendant to assist it in arriving at a conclusion as to the mental condition on January 23, 1959 and April 17, 1959. They show that the defendant was admitted there the first time on December 29, 1950 with a diagnosis of dementia praecox, catatonic, and discharged November 5, 1952 with a diagnosis of psychosis with psychopathic personality, depression. His admission was caused by his setting a fire in his cell, seeing his deceased mother, and cutting his wrists. While in the hospital he stated he lied about seeing his deceased mother and acted the way he did to get transferred from that prison.

He was next admitted December 3, 1952 with a diagnosis of psychosis with psychopathic personality, transient, and discharged as recovered on March 31, 1953. He received shock treatments while in the hospital. He was committed this time for setting a fire in his cell, breaking a window in the presence of the psychiatrist at Clinton Prison and spitting in the psychiatrist's face. After commitment he stated he could not stand the prison routine and was upset because of his return to the prison population.

He was again committed on December 9, 1953 with a diagnosis of psychosis with psychopathic personality, episode of depression. On February 17, 1955 he was discharged as recovered. The cause of this commitment was because of a suicidal attempt with a razor on his wrist, the cuts being superficial. He received shock treatment 15 times. He stated the suicide attempt was only showing off and was resentful for being locked up after a fight in the prison yard. There were no further commitments to Dannemora State Hospital from February 17, 1955 until February 17, 1960.

He was paroled in 1957 and one of the conditions was to continue under psychiatric care. He was arrested about 6 months later as a parole violator. While awaiting disposition he made many suicide attempts. It is significant that with all the suicide attempts he not only never succeeded but any report available indicates all these cuts were superficial.

After his sentence in this court he was again committed on February 17, 1960 from Green Haven Prison and was again diagnosed as having a psychosis with psychopathic personality, episode of depression. The reason for this commitment was that he was found in his cell bleeding from the mouth. The defendant

said he broke and swallowed a light bulb. However, after admittance he stated he was not well-adjusted in Green Haven Prison and wanted to be transferred to Clinton Prison. That in fact he had broken an electric bulb and scratched his gum with a piece of the glass to simulate bleeding from the stomach and that he had no intention to commit suicide. It was during this commitment that he made the application which has resulted in this hearing. He was discharged and returned to prison on November 28, 1960 as recovered. The records of Dannemora State Hospital do not indicate to what institution he was returned.

He last commitment, prior to this hearing, was on October 27, 1961 from Clinton Prison. He was admitted as a potential suicide because he complained that he was suffering unbearable pain due to injections he had received for varicose cruris. He was diagnosed as having psychosis with psychopathic personality with the psychosis being vague and ill-defined. After admittance he said he was dissatisfied with the medical treatment at Clinton Prison and wanted to be sent to Green Haven. On January 30, 1962, he got his wish and was sent to Green Haven Prison, having been diagnosed as recovered from psychosis. This was 5 days after the Court of Appeals had directed that a hearing be held on his allegations. He was returned from Green Haven Prison to this court for this hearing.

The court has had an opportunity to observe the defendant at the time of this hearing, as well as the insanity hearing of August 14, 1962, and evaluate not only his testimony but his demeanor. In addition to the evidence adduced at the hearings, the court has before it all of the complete reports of Dannemora State Hospital of all his commitments as well as the recent reports of Kings County Hospital and Bellevue Hospital.

The court has examined the reports thoroughly and it is the opinion of this court that the defendant was not insane on January 23, 1959 when he plead guilty to attempted robbery, third, or on April 17, 1959 when he was sentenced, and was capable of understanding the charge against him, the proceedings, and of making his defense. As of now the defendant's parole term expires December 10, 1970 and his full term expires September 2, 1985. It is not unusual under the circumstances that the defendant resorts to any form of relief available. Apparently he does not limit it to writs of error *coram nobis* but also when he desires to be transferred from one institution to another he resorts to a regular pattern. Over the course of years he has become " prison wise " to this method. It is significant that the decision of the Court of Appeals was rendered January 25, 1962 and on January 30, 1962 he was sent to Green

Haven Prison having been diagnosed as recovered from his psychosis.

The defendant has failed to sustain his contentions by clear and convincing proof. Motion is denied.